## NEW YORK AND NEW ENGLAND RAILROAD COMPANY *vs.* CITY OF BOSTON & another.

Suffolk. March 21. — July 29, 1879. AMES & LORD, JJ., absent.

A corporation was authorized by the Legislature to fill in flats within a harbor, and a city was authorized to lay out streets over the flats within a certain time. The city laid out streets within the time; and, after the time had expired, discontinued one of the streets, except a small part at one end, and laid out a street which, beginning at a different point, took in the part not discontinued, and ran in a somewhat different direction. *Held,* that the second street was a new street, and not merely an alteration of the first one.

In 1850, a railroad corporation was authorized by statute to construct its railroad twenty-six feet in width over the South Boston flats, which were then covered by navigable waters. In 1854, its location over these flats was accepted. Subsequently, in the same year, a wharf company was authorized to extend its wharf and fill in these flats, and the city of Boston was authorized to lay out streets over them within a certain time. In 1855, after the expiration of the time limited, the city laid out A Street crossing the railroad, subject to a proviso that the wharf company should convey to the city the land taken for the street. The wharf company conveyed the land, and made an agreement with the city to fill the street at the time it filled its own territory. In 1873, the railroad corporation accepted a statute passed that year authorizing it to take a large parcel of the flats for the purpose of increasing its terminal facilities, with the right to construct suitable approaches for the use of its railroad from its location to any of the property acquired under the statute. The bounds of the land which the corporation was authorized to take included the place where A Street was laid out across its road; but the statute provided that the corporation was not authorized to take any part of the land within the limits of A Street, as located by the city or conveyed to the city by the wharf company, but that the street might be crossed by the track of the railroad corporation in such places and to such extent as should not prevent the use of the same for public travel. A portion of A Street was at this time completed and opened for travel, but not to the location of 1853 of the railroad corporation. In 1877, the city established the grade of A Street, on a level with the railroad; and, in 1878, the street was completed except at the crossing. The Legislature enacted the above and other acts as parts of a scheme for filling the flats in which the Commonwealth and the city were interested. *Held,* that, whether the original laying out of A Street was valid or not, it was confirmed and made valid by the St. of 1873; and that the railroad corporation was not entitled to an injunction to restrain the city from constructing the street at grade across the railroad.

BILL IN EQUITY, filed December 11, 1878, against the city of Boston and Charles Harris, its superintendent of streets, to restrain them by injunction from constructing the street, called A Street, in South Boston, at grade, over the tracks of the plaintiff's railroad. The case was heard by *Ames,* J., and reported for the determination of the full court in substance as follows:

The plaintiff corporation is the legal successor of the Midland Railroad Company, (which was incorporated by the St. of 1850, c. 268, and authorized to build a pile bridge twenty-six feet in width over the South Boston flats,) and owns and operates the road, and is entitled to all the rights and privileges of the latter corporation. By the St. of 1853, c. 311, the location over these flats was changed; and the point of crossing is within the location of the road as authorized and required by the latter statute, and is shown on the plan printed in the margin.* This new location was duly filed with the board of aldermen of the city of Boston, on March 31, 1854, and accepted by that board on December 30, 1854, and was and is in all respects the legal location of the Midland Railroad Company and of the plaintiff. The tracks over this location were laid, and the road was in operation and cars running, prior to January 1, 1855, and it has been since that time, and is now, so operated and run.

On April 4, 1854, the Legislature passed an act authorizing the Boston Wharf Company to construct their wharf to the commissioners' line; § 3 of which provides that " the city of Boston shall have the right to lay out such streets, with sewers under the same, as public convenience and necessity may require, on

*

the territory over which the Boston Wharf Company is hereby authorized to construct their wharf; provided, however, that all such streets shall be laid out within one year from the passage of this act." St. 1854, *c.* 218. The territory comprised in this act was at this time unfilled flats, over which the tide ebbed and flowed, and was crossed by the location and tracks of the plaintiff corporation.

On April 4, 1855, the board of aldermen of the city of Boston passed an order laying out several streets over this territory, one of which, fifty feet wide, is shown on the plan, and is marked B C D E.

On December 17, 1855, the same board passed an order discontinuing this street, except the triangular portion enclosed in dotted lines on the plan; and, on the same day, passed an order laying out A Street from the points G and H on the northeasterly side of Eastern Avenue, and running in the direction of the points marked F and I, and extending in the same direction beyond them. The discontinuance of the street laid out on April 4, 1855, and the laying out of the new street were subject to the proviso that the Boston Wharf Company should release all claim for damages on account of such discontinuance, and should convey to the city the land taken for the new street; and this was done by a deed executed by the Boston Wharf Company on December 26, 1855. On the last-named day, the city made an agreement with the Boston Wharf Company for the filling of A Street.

On May 15, 1873, the St. of 1873, *c.* 289, took effect. This act ratified and confirmed the formation of the plaintiff corporation, and authorized it to take a large parcel of land and flats, including that shown on the plan, for the purpose of increasing its terminal facilities in Boston, " with the right to construct suitable approaches, for the use of said railroad, from the present location of said road to any property acquired under the above provisions; " subject to the following proviso: " provided that the said railroad company are not hereby authorized to take any part of the land within the limits of A Street as located by the city of Boston, or conveyed to the said city by the Boston Wharf Company, or of the extension of the same to Eastern Avenue; but the said street may be crossed by the tracks of the

said railroad company in such places and to such extent as shall not prevent the use of the same for public travel as a highway." This act was accepted by the plaintiff corporation; and, at the time of its passage, A Street had been completed and opened to public travel to a point about one thousand feet southwesterly from where the plaintiff's tracks cross the street. Work on the street from this point was begun in 1878, and early in December of that year the street was graded to the crossing of the plaintiff's road; but up to that time no work had been done on the portion of the street northerly of this crossing.

On December 3, 1877, the board of aldermen established the grade of A Street at sixteen feet above mean low water, which would bring it to the level of the plaintiff's road. On December 10, 1877, the superintendent of streets was instructed by an order of the board of aldermen to grade A Street to the established grade; and on December 9, 1878, the superintendent of streets was directed by an order of the same board to put down planks or timbers between the rails of the plaintiff's road at the crossing of A Street, and to do such work as might be necessary to make A Street where crossed by the plaintiff's road safe and convenient for public travel.

*W. G. Russell & J. L. Stackpole*, for the plaintiff. 1. At the time the location of the plaintiff's road was accepted by the board of aldermen, in 1854, § 69 of the Rev. Sts. *c.* 39, was in force, by the terms of which a way could not be laid out over a railroad at grade. See *Boston & Maine Railroad* v. *Mayor, &c. of Lawrence*, 2 Allen, 107. By the St. of 1857, *c.* 287, authority was given to county commissioners, upon application and hearing, to permit grade crossings when public necessity requires. This was reënacted in the Gen. Sts. *c.* 63, § 57 *& seq.*, and in the St. of 1874, *c.* 372, § 86 *& seq.* And, by the St. of 1876, *c.* 73, the consent of the railroad commissioners is also required to make such a crossing legal. No action has been taken by the defendant city under these statutes.

2. The St. of 1854, *c.* 218, authorizing the defendant city to lay out streets on this territory, did not repeal by implication the Rev. Sts. *c.* 39, § 69. *Goddard* v. *Boston*, 20 Pick. 407. *Somerville* v. *Boston*, 120 Mass. 574. *The Distilled Spirits*, 11 Wall. 356. The attempt of the city to lay out a street over the loca-

tion of the plaintiff's road was therefore of no effect.  *Common-wealth* v. *Haverhill*, 7 Allen, 523.

3. The street attempted to be laid out in April 1855 was discontinued, and the street laid out in December of that year was a different street, and not an alteration of the old street.  It had different termini, a different direction, and occupies different ground.  See *Commonwealth* v. *Cambridge*, 7 Mass. 158; *Commonwealth* v. *Berkshire*, 8 Pick. 343; *Bliss* v. *Deerfield*, 13 Pick. 102; *Goodwin* v. *Marblehead*, 1 Allen, 37; *Hobart* v. *Plymouth*, 100 Mass. 159.  The new street, not being laid out within the year allowed by the St. of 1855, *c.* 218, and being laid out over navigable waters, was illegally laid out.  *Commonwealth* v. *Coombs*, 2 Mass. 489.  *Arundel* v. *M'Culloch*, 10 Mass. 70.  *Commonwealth* v. *Charlestown*, 1 Pick. 180.  *Kean* v. *Stetson*, 5 Pick. 492.  *Charlestown* v. *County Commissioners*, 3 Met. 202.  *Henshaw* v. *Hunting*, 1 Gray, 203.  *Marblehead* v. *County Commissioners*, 5 Gray, 451.

4. The St. of 1873, *c.* 289, has no bearing on the case.  This act authorized the plaintiff to take land and flats for terminal purposes, and with the right to construct suitable approaches from the location of the road to any of the land acquired under the act.  The proviso that land within the limits of A Street shall not be taken, does not apply to the location already existing; and the provision allowing A Street to be crossed at grade, "in such places and to such extent as shall not prevent the use of the same for public travel as a highway," refers, not to the location already existing, but to the future use of the territory by terminal tracks.  Permission granted in 1873 to the railroad corporation to cross with new terminal tracks a street the grade of which had not then been established, of which permission the corporation has not availed itself, and does not propose to avail itself, cannot be construed into authorizing the laying out at grade of a street over an existing track on which the main traffic of the corporation is transacted.

*C. T. Russell*, for the defendants, besides the statutes referred to in the opinion, cited Sts. 1868, *c.* 326; 1869, *c.* 446; 1871, *cc.* 373, 397; Resolve 1871, *c.* 91.

MORTON, J.  We have not deemed it necessary to consider whether the original laying out of A Street by the order of

December 18, 1855, was valid, because we are of opinion that, if it was invalid, it was confirmed and made valid by the St. of 1873, c. 289.

In determining the effect of this act and the intention of the Legislature, we must have regard to the state of facts existing at the time it was passed. It affected a large tract of flats and newly made land between Boston and South Boston, in which the Commonwealth and the city of Boston had important interests as proprietors. Many special acts and resolves had been passed, of which the purpose was to fill up the flats, and to improve and make valuable this territory.

From the nature of the case, the territory when filled must be flat and level. It would be impossible to lay out streets which should pass under the plaintiff's railroad, and it would be a serious impediment in the development and improvement of the teritory if the streets were required to pass over the railroad at a higher level.

By the St. of 1854, c. 218, the Legislature had authorized the Boston Wharf Company to fill up its flats, and by the fifth section had authorized the city of Boston to lay out streets on the territory which the Boston Wharf Company was authorized to fill, provided that such streets should be laid out within one year from the passage of the act. Under this authority, the city proceeded to lay out a number of streets on the territory by an order passed April 4, 1855, being within the year. But the city afterwards changed its plans, and, by an order dated December 18, 1855, laid out the street which is the subject of this suit. We cannot regard this as an alteration of one of the streets laid out by the order of April 4, 1854, but must treat it as a new laying out. The city of Boston had proceeded under this laying out, and constructed and opened for public travel a part of the said street, at the grade contemplated in the order, which would cross the plaintiff's track on a level when the flats were filled. It is to be observed that the plaintiff was not allowed to locate its road over this tract in the usual way, by taking five rods in width, but the direction and width of its track were carefully defined by the Legislature. St. 1850, c. 268.

It is not practicable, without undue length, to refer to the various statutes, resolves and contracts of the Commonwealth

respecting the development and improvement of this territory. An examination of them will show that the Legislature regarded the matter as presenting an exceptional case, in which deviations from the general policy of the state as to the construction of railroads and streets were necessary in order to effect the redemption and improvement of a large and valuable tract of flats.

Under such circumstances, the St. of 1873, *c.* 289, was passed. It must be regarded as a part of the general scheme of the Commonwealth in dealing with this territory. In the fifth section it authorizes the plaintiff, for the purpose of increasing its terminal facilities in Boston, to take or purchase a tract of land and flats which includes A Street where it crosses the track, " provided that the said railroad company are not hereby authorized to take any part of the land within the limits of A Street as located by the city of Boston, or conveyed to the said city by the Boston Wharf Company, or of the extension of the same to Eastern Avenue ; but the said street may be crossed by the tracks of the said railroad company in such places and to such extent as shall not prevent the use of the same for public travel as a highway." This cannot be regarded as a mere incidental or unimportant reference to a street supposed to exist. It must be presumed that the Legislature understood the subject with which it was dealing, and knew that this street had been located over tide waters, and at a grade which was on a level with the railroad track of the plaintiff after the flats were filled. The statute not only refers to the street as a boundary, but it takes care to protect the rights of the city in it as a street, and recognizes it as a public highway. These provisions would not have been made unless the Legislature had intended that A Street as located by the city of Boston should be regarded and treated as a legal public highway. We think that this statute was a recognition and affirmation of said street as a legal street, and had the effect to cure any illegality or defect in its original laying out.

The plaintiff therefore cannot maintain its bill.

*Bill dismissed.*